UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAWN WILLIAMS,<br>    Plaintiff,<br><br>v.<br><br>Z. D. MASONRY, CORP., ET AL.,<br>    Defendants. | Case No. 07 C 6207<br><br>District Judge Ronald A. Guzman<br><br>Magistrate Judge Geraldine Soat Brown |

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

Following the entry of judgment against the defendants, plaintiff Shawn Williams filed the present motion seeking an award of $43,287.50 in attorney's fees and $1,223.87 in costs. (Pl.'s Mot. at 1.) [Dkt 36.][1] The motion was referred here for decision. [Dkt 40.] For the reasons set forth herein, the motion is granted in part and denied in part. Plaintiff is awarded $36,064.60, representing attorney's fees in the amount of $35,235.94 and costs in the amount of $828.66.

**BACKGROUND**

Plaintiff Shawn Williams filed this action under the Civil Rights Act of 1964 as amended,

---

[1] Plaintiff's Motion to Award Fees and Costs is cited herein as "Pl.'s Mot." and attorney Barry M. Bennett's attached declaration is cited as "Bennett Decl." Plaintiff's Supplemental Statement in Support of Motion for Fees and Costs [dkt 45] is cited as "Pl.'s Supp. Stmt." and attorney Bennett's attached supplemental declaration is cited as "Supp. Bennett Decl.")

1

42 U.S.C. § 2000e, *et seq*. ("Title VII"), and 42 U.S.C. § 1981. (Compl. ¶ 1.) [Dkt 1.] He complained that Z.D. Masonry, Corp., Northside Construction and Development Corp., Zbigniew Dziadana, Z.D. Masonry and Remodeling Corp., City of Chicago Masonry, Inc., and Z.D. Masonry and Tuckpointing Corp. (collectively, "defendants"), acting as a single business entity, had discriminated against him on the basis of his race (African American), color (non-white) and national origin (non-Polish) in denying him the opportunity to apply for work as a bricklayer and stone mason. (*Id*. ¶¶ 12-16.) Although each of the defendants were served with summons and a copy of the complaint, none of the defendants appeared. As a result, a default judgment was entered on January 31, 2008. [Dkt 25.] Thereafter Plaintiff submitted evidence in support of his damages claims, and on March 31, 2008, the court entered judgment against the defendants jointly and severally and in favor of Plaintiff in the amount of $97,574.74, comprised of $83,396.64 in back wages, $4,178.10 in interest and $10,000 as punitive damages. [Dkt 31.] Pursuant to Local Rule 54.3, Plaintiff filed the present motion for fees and costs.

## DISCUSSION

### I. Attorney's Fees

As the prevailing party in this case, Plaintiff may be awarded a "reasonable attorney's fee" as a portion of the costs of bringing suit. 42 U.S.C. §§ 1988, 2000(e)-5k. The court has discretion in determining the appropriate amount of an attorney's fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This calculation results in the lodestar amount, which is the "guiding

light" of federal fee-shifting jurisprudence, though it may be adjusted by a number of factors as necessary to determine a reasonable fee. *Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Mathur v. Bd. of Trustees of S. Ill. U.*, 317 F.3d 738, 742 n. 1 (7th Cir. 2003).

The party seeking the award of fees bears the burden of establishing an entitlement to the award and documenting the number of hours reasonably expended by the party's counsel and their reasonable hourly rates. *Hensley*, 461 U.S. at 433. An hour reasonably expended is an hour that is not excessive, redundant or otherwise unnecessary. *Stark v. PPM America, Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Hensley*, 461 U.S. at 433; *Stark*, 354 F.3d at 674.

An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993)). The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate. *Mathur*, 317 F.3d at 743 (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)). The next best evidence of an attorney's market rate includes evidence of the rates that similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. *Spegon*, 175 F.3d at 555.

### A.      Billed Hours

Plaintiff seeks to recover $43,287.50 for attorney and clerk time in this litigation. Included in the request are fees for 100.85 hours of Plaintiff's lead attorney Barry M. Bennett, .35 hours of

3

attorney Michele Reynolds, 7.6 hours of attorney Steven Jados, and one hour of an unnamed "research clerk." (Pl.'s Mot., Ex. A, Bennett Decl. ¶ 22.) In support of the motion, Plaintiff submitted his attorneys' billing records (*id.*, Ex. B) and Mr. Bennett's detailed declaration explaining the records and carefully categorizing the work performed. Mr. Bennet's declaration attests to his more than 20 years experience practicing exclusively in the fields of labor and employment law, his usual hourly rates for individual employment work, and his usual mixture of hourly and contingency fee work. (Bennett Decl. ¶¶ 9-13.) Plaintiff also submitted the declarations of attorneys Robin Potter, Edward C. Jepson and Jules I. Crystal; all three declarants are experienced employment law attorneys who attest to their substantial familiarity with Mr. Bennett's work, his practice field and the local labor and employment legal market. (Pl.'s Mot., Exs. D, E and F, Decls. of Robin Potter, Edward C. Jepson and Jules I. Crystal.)

The requested rates for Mr. Bennett are $350 per hour while the matter was pending at the Equal Employment Opportunity Commission, and $400 per hour for work after that point. (Bennett Decl. ¶ 14.) Mr. Bennett attests that, in addition to his litigation practice representing labor organizations, he handles around 25 to 40 individual employment matters per year at hourly rates of $350 to $400, and that in situations in which litigation may be required, he typically adds a 20% premium to his hourly rates. (*Id.*, ¶¶ 12, 13.) Attorneys Potter, Jepson and Crystal each attest that the rates Mr. Bennett claims are within the norm for an attorney of his experience and skill. (Potter Decl. ¶ 14; Jepson Decl. ¶ 13; Crystal Decl. ¶ 11.) Plaintiff has established Mr. Bennett's non-litigation and litigation hourly rate for this matter at $350 per hour at the administrative level and

$400 per litigation hour.[2]

Most of Mr. Bennett's expended time is reasonable in this case. A portion of Mr. Bennett's billed hours (14.50) represent work he performed while this matter was pending before the E.E.O.C. Since the proceeding before that agency is part of the enforcement of rights under Title VII, attorney time reasonably expended before that agency is recoverable. *Barrow*, 977 F.2d at 1104 (citing *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980)).

Certain of the tasks for which Mr. Bennett billed both at the administrative phase and when the case turned to litigation, however, are tasks that clerical staff could have performed. Mr. Bennett billed .10 hour (at $350 per hour) working with the E.E.O.C.'s copy service to obtain copies of a file and later billed 2.75 hours (at $400 per hour) working with a process server to coordinate service of the defendants and noting service dates. (Pl.'s Mot., Ex. B.) The record does not explain why an attorney with Mr. Bennett's level of experience would spend time performing such tasks nor does it appear that a fee-paying client would pay Mr. Bennett's rates for performing such tasks. In reviewing a motion for fees, the court should disallow hours expended by counsel on tasks that are easily delegable to non-professional assistance. *Spegon*, 175 F.3d at 553. The court therefore disallows 2.85 of Mr. Bennett's requested hours (.10 hour at the $350 rate and 2.75 hours at the $400 rate).

Although Mr. Bennett expended a substantial amount of time in a case in which a default

---

[2] Plaintiff apparently already paid his counsel 50% of the requested hourly rates. (Bennett Decl. ¶ 18) This case does not, however, present a disguised risk multiplier which is prohibited in fee petitions. *See Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992). Plaintiff has established that Mr. Bennett's requested hourly rate is reasonable in that he routinely charges the requested rate to his fee-paying clients and that the rate is within community norms.

judgment was obtained, the record reflects that most of his billed time was reasonable.[3] As Plaintiff points out, this case was more complicated than other individual employment matters both at the administrative and court levels. Plaintiff's claim was made against several interrelated defendants, each of whom had to be researched and served, and when it came to the litigation, each of whom refused to participate. (Bennett Decl. ¶ 28.) Although the litigation ended relatively swiftly, counsel for Plaintiff made several court appearances, presented two separate motions for defaults, prepared witnesses for an evidentiary hearing on damages, and prepared a written evidentiary submission in order to obtain the judgment. (*Id*.)

More than 20% of the fees requested, 24.30 of 109.80 hours, consists of work associated with the present motion for fees and costs. (Bennett Decl. ¶¶ 20-21.)[4] Most of the time spent on the motion, 24 of the 24.30 hours, are attributable to Mr. Bennett. (Pl.'s Mot., Ex. B.) The remaining .3 hour was billed by Mr. Jados and is discussed separately below. In determining the reasonableness of hours spent on preparing a fee petition, the court may consider the comparison between the hours spent on the merits and the hours spent on the fee petition. *Spegon*, 175 F.3d at 554; *Ustrak v. Fairman*, 851 F.2d 983, 987-988 (7th Cir. 1988). Courts in the Seventh Circuit have found that devoting fifteen minutes to the petition for every hour spent litigating the case to be

---

[3] Plaintiff's attorneys used block billing in their time records, lumping individual entries together with only a total time expenditure for the day. (Pl.'s Mot., Ex. B.) Although block billing does not provide as much information as task itemized billing, the detailed records here are not so vague as to necessitate a reduction in the claimed fee on that basis. *See Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006); *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 835 n. 7 (N.D. Ill. 2007).

[4] Plaintiff seeks 26 hours for Mr. Bennett's work on the fee petition, including two prospective hours of Mr. Bennett's time for additional work anticipated to be associated with the motion for fees. (Bennett Decl. ¶ 30.) Plaintiff has cited no authority for such an award. Those two hours are disallowed and are excluded from further calculation.

excessive. *See, e.g.*, *Ustrak*, 851 F.2d at 987-988; *Delgado v. Village of Rosemont*, 2006 WL 3147695 at *4 (N. D. Ill. Oct. 31, 2006) (collecting cases and noting that courts reduce fee petitions to less than 10% of total hours). The relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case. *Spegon*, 175 F.3d at 554.

Applying that standard, 24 hours of work on Plaintiff's fee petition is large relative to the time spent litigating. Apparently, 4.25 hours of that time were incurred in preparing and presenting a motion seeking the court's instructions about complying with Local Rule 54.3 in light of the defendants' absence from the litigation. (Pl.'s Mot., Ex. B.) That work was reasonable in this situation. The question is the remaining 19.75 hours spent on the fee petition.

Local Rule 54.3 is intended to minimize the time required by the court and counsel to deal with fee petitions. It requires the parties to cooperate in a good faith effort to reach agreement on the amount of fees and costs to be awarded. Only matters that remain in dispute after that effort are to be presented to the court. (N.D. Ill. Local R. 54.3(e).) Mr. Bennett explains that the defendants' failure to cooperate in the process required by Local Rule 54.3 meant that he had to detail, explain and justify every aspect of Plaintiff's counsel's time and costs. (Bennett Decl. ¶ 28.) Nothing could be deemed undisputed, and Plaintiff was required to prove every element.

This is not a situation like *Spegon,* where the plaintiff early on accepted a $1,100 offer of judgment and his counsel asked for $7,280 in attorney's fees, including $2,000 just for preparing the fee petition. 173 F.3d at 549. Still, the ratio here of almost 20% (19.75 hours to 109.80 total) is higher than generally awarded in this circuit. In light of the circumstances of this case, the award will allow 13.25 hours for work on the petition (roughly two-thirds of the 19.75 hours Plaintiff

seeks), plus the 4.25 hours incurred in presenting the motion, for a total of 17.5 hours at Mr. Bennett's $400 hourly rate.

Making all of the calculations set forth above, Plaintiff is awarded $35,080 for Mr. Bennett's time. ($5,040 [14.4 hours x $350] + $30,040 [75.1 hours x $400] = $35,080.)

In addition to Mr. Bennett's time, Plaintiff seeks an award of fees for 7.75 hours billed by his associates: .35 hours billed by Ms. Reynolds and 7.6 hours billed by Mr. Jados. (Bennett Decl. ¶¶ 16-17.) Initially, Plaintiff requested an hourly rate of $350 for both attorneys. (*Id.* ¶ 14.) Plaintiff's motion, however, failed to provide any information supporting the requested rates or explaining why the rates for a lawyer with ten years experience (Reynolds) and a junior associate (Jados) would be identical to each other and so similar to that of Mr. Bennett. (Order Nov. 18, 2008.) [Dkt 44.] Although the court allowed Plaintiff to supplement his submission with regard to attorneys Reynolds and Jados, he declined to do so. (Pl.'s Supp. Stmt. at 4.) Instead, Plaintiff chose simply to reduce the hourly rate requested for the work of those attorneys. (*Id*.)

A party seeking attorney's fees must do more than simply request an hourly rate. Indeed, the cases are uniform in requiring something beyond the attorney's own affidavit to establish a reasonable hourly rate. *See, e.g.*, *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000); *Spegon*, 175 F.3d at 556; *O'Sullivan*, 484 F. Supp. 2d at 834. The burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavit to prove that the requested rates are in line with those prevailing in the community of similar services by lawyers of reasonably comparable skill, experience and reputation. *Spegon*, 175 F.3d at 556; *O'Sullivan*, 484 F. Supp. 2d at 834. In this case, because Plaintiff has not provided any information to support the hourly rate requested for the work of Ms. Reynolds and Mr. Jados, their time is disallowed.

Finally, Plaintiff seeks recovery of $90 for one hour of time for an unnamed research clerk. (Pl.'s Mot. at 2). Although the submitted billing records indicate a one hour entry for legal research (*id.*, Ex. B), Plaintiff has not put forward any information with which the court can determine whether the rate requested is a reasonable market rate. The court therefore disallows the charge.

### B. Other Components of Attorney's Fees

Plaintiff seeks $110.47 for the expense of computerized legal research. (Pl.'s Mot., Ex. C.) Because computerized legal research generally enhances an attorney's legal research efficiency, it is recoverable as a subset of attorney's fees. *See Haroco, Inc. v. American Natl. Bank & Trust of Chicago,* 38 F.3d 1429, 1440 (7th Cir. 1994). In this case, however, Plaintiff has not submitted any information from which the court may determine whether the computerized legal research charges were reasonably incurred. Neither the initial submission nor the supplemental submission describe what research was performed, or even when during each billing month the research was undertaken. The billing records merely indicate charges for Lexis research "regarding S. Williams." (Pl.'s Mot., Ex. C.) Without additional description, the court cannot conclude that the research was reasonably incurred. The costs for computerized legal research are disallowed.

Plaintiff requests $150 reimbursement for six "e-filings" at $25 each. Mr. Bennett explains that his firm charges a standard rate of $25 per filing for paralegal time to file documents using the court's electronic filing system. (Supp. Bennett Decl. ¶ 10). That is based on the firm's determination that electronic filings must be done by a lawyer or paralegal. (*Id.*) A reasonable attorney's fee should compensate for the work of paralegals, as well as that of attorneys. *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). "Of course, purely clerical or secretarial tasks should not be

9

billed at a paralegal rate, regardless of who performs them." *Id*. at 288 n.10. Some courts have declined to award paralegal time spent in electronic filing. *See, e.g., Francis v. Snyder*, 2006 WL 1236052 at *4 (N.D. Ill. May 4, 2006). However, the fact that the court provides training and court certification to enable people to file electronically (*see* N.D. Ill. Gen. Order 07-0023, IV(B), viewed at www.ilnd.uscourts.gov/PRESS/GeneralOrder102607.pdf), suggests that electronic filing is more than a purely administrative or clerical function. In light of the problems that can result from a botched electronic filing, the court will not second-guess the firm's decision that such filing must be overseen by a paralegal.[5] The $150 charge will be allowed.

Finally, Plaintiff seeks an award of $5.94 as an expense his counsel incurred in sending certified mail to the E.E.O.C. (Pl.'s Mot., Ex. C.) Awards of attorney's fees under fee shifting civil rights statutes include out-of-pocket expenses that are reasonably incurred by an attorney and normally passed on to a fee-paying client. *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984); *Tennes v. Mass. Dept. of Revenue*, 745 F. Supp. 1352, 1363, (N.D. Ill. 1990), *aff'd*, 944 F.2d 372 (7th Cir. 1991). Here, the postage charge was incurred in mailing a certified letter to the E.E.O.C., billed to the client, and indeed already paid by the client. (Bennett Decl. ¶ 18; Pl.'s Mot., Ex. C.) The court allows the $5.94 charge.

The court therefore grants Plaintiff's fee request to the extent set forth above and awards Plaintiff a total of $35,235.94 in attorney's fees. ($35,230 in time + $5.94 in out-of-pocket expenses.)

---

[5] *See, e.g., In re Frankel*, 391 B.R. 266 (Bankr., M.D. Pa., 2008), where the court considered but ultimately declined to enter punitive damages against a lawyer and his firm for filing a complaint against a debtor in violation of the bankruptcy automatic stay. The lawyer blamed one of his clerical staff who electronically filed the wrong version of the complaint.

## II. Costs

In addition to attorney's fees, Plaintiff seeks to recover statutory costs. (Pl.'s Mot. at 1.)[6] Under Fed. R. Civ. P. 54(d), costs are allowed as a matter of course to the prevailing party. The costs that may be awarded pursuant to Rule 54(d) include: (1) fees of the clerk and marshal; (2) fees for transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses;(4) fees for copies of any materials necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts and certain interpreters. 28 U.S.C. § 1920.

### A. Private Process Server Fees

Plaintiff seeks recovery of $440.00 for private process server fees. Private process server fees are recoverable under 28 U.S.C. § 1920(1) so long as they do not exceed the cost had the U.S. Marshals effectuated service. *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). The allowable costs for service of process by the U.S. Marshals when Plaintiff incurred the charge was $45 per hour for each item served plus travel costs and any other out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3). Plaintiff submitted evidence that he paid a private process server $65 each for service of the summons and complaint on six defendants, and a $50 additional fee for correcting an address. (Pl.'s Supp. Stmt., Ex. H.) The supporting documentation does not indicate any travel or out-of-pocket costs were incurred by the server. (*Id*.) Plaintiff therefore is awarded $315, or $45 for each item served plus $45 for one additional hour's labor.

---

[6] Some of the amounts Plaintiff sought as "costs" are more properly considered part of attorney's fees and are discussed in Section I. B. above.

### B. Photocopies

The prevailing party may recover "fees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The language "for use in the case" refers to materials actually prepared for use in presenting evidence to court. *Tony Jones Apparel, Inc. v. Indigo USA, LLC*, 2005 WL 3115234 at *4 (N.D. Ill. Nov. 16, 2005). In proving that the copies were necessary for the case and not made solely for the attorney's own convenience, a party need not submit a description so detailed as to make it impossible economically to recover. *Id*. It is sufficient that a party seeking recovery of such costs identify the nature of each document copied, the number of copies of each document prepared, the copying cost per page, and the total copying cost. *Id*.

Plaintiff seeks recovery of $133.80 for internal photocopy expenses. (Bennett Decl. ¶ 31.) Although Plaintiff's initial submission failed to provide sufficient information with which to assess the propriety of the claimed charges, his supplemental submission describes each document copied, the number of pages copied and for whom the copies were made. (Supp. Bennett Decl. ¶¶ 7-9.) Plaintiff submitted evidence that his counsel charges 20¢ per page for internal copying and indeed already has collected that from the client in this case. (Bennett Decl. ¶ 18; Supp. Bennett Decl.¶¶ 7-9.) Plaintiff may recover for the expense of making copies of filings for the court and for the several defendants, but he may not recover the cost of copies made for the convenience of his own counsel. *See Nilssen v. Osram Sylvania, Inc.*, 2007 WL 257711 at *6 (N.D. Ill. Jan. 23, 2007); *Tony Jones Apparel*, 2005 WL 3115234 at *4. Plaintiff is awarded $130 for photocopies (five copies of the 60 page memorandum in support of judgment, 5 copies of the 62 page fee motion, and one copy of 40 pages of billing records).

Plaintiff also seeks to recover $33.66 for the cost of copying his E.E.O.C. file at the agency's

designated printer. (Bennett Decl. ¶ 31; Pl.'s Mot., Ex. C.) The expense of copying the E.E.O.C.'s file for use in this litigation is reasonable. *See Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998). Plaintiff is awarded $33.66 for this photocopy expense. Lastly, Plaintiff requests an award of the $350 filing fee. Plaintiff plainly is entitled to recoup his filing fee under § 1920 and it is awarded.

## CONCLUSION

For the reasons stated above, Plaintiff is entitled to a total award of $36,064.60, representing $35,235.94 in attorney's fees and $828.66 in costs. The clerk of the court is directed to tax the costs against the defendants.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

February 17, 2009